UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10061-GAO

EVEDEN, INC.,
Plaintiff,

v.

THE NORTHERN ASSURANCE COMPANY OF AMERICA,
Defendant.

OPINION AND ORDER
March 12, 2014

O'TOOLE, D.J.

The plaintiff, Eveden Inc. ("Eveden"), brought this action against The Northern Assurance Company ("Northern"), seeking recovery for a loss it claims falls within the coverage provided under its "all risk" cargo insurance policy with Northern. Specifically, Eveden brings four counts against Northern: breach of contract, declaratory judgment, breach of implied covenant of good faith and fair dealing, and violation of Massachusetts General Laws, chapter 93A. The parties have cross-moved for summary judgment on all claims on a substantial summary judgment record. Both sides make their presentation in exquisite detail, but in the end the resolution of their dispute does not turn on a close analysis of subsidiary facts, but rather can satisfactorily be understood and determined at a broader level, and that is sufficient to conclude that Eveden's claimed loss is not covered by the Northern policy.

## I. Background

### A. The Parties' Relationship

At relevant times, Eveden, a Massachusetts corporation, maintained a place of business in Hyde Park. At the time of the relevant events, Eveden had for some time been engaged in the

business of manufacturing and selling ladies' undergarments, using manufacturing facilities located in various countries other than the United States, including the Philippines, El Salvador, and Colombia. In 2005, Eveden made the decision to consolidate all of its foreign manufacturing into one facility to save costs in both freight and labor. Rick Alexander, president of Eveden's U.S. Division, met with a former business partner, Fernando Herradon, to explore establishing a manufacturing facility in the Dominican Republic. Eveden was only interested in facility located in a "Duty Free Zone," from where a manufacturer may ship its products duty free. The laws of the Dominican Republic afforded that opportunity. After some negotiations with Eveden, Herradon and his partner, Juan Carlos Garcia, created F&J Internacional, S.A. ("FJI"), a Dominican manufacturing entity that qualified for a license to operate in a Duty Free Zone.

Eveden identified such a facility in the Duty Free Zone of San Pedro de Macoris (the "Facility"). In August 2005 it entered into a production agreement with FJI and moved its sewing operations to the Facility by the end of 2005.

To satisfy the requirements of Dominican law, all inventory of raw materials, work in process, and finished goods at the Facility had to be deemed owned by FJI. Under Dominican law, there is a presumption that one in possession of goods is the owner. Accordingly, all materials shipped to the Facility by Eveden were shown on all the shipping and customs documents as consigned to FJI. Similarly, finished goods being shipped out of the Duty Free Zone were shipped under FJI's name. Customs officials of the Duty Free Zone also required FJI to produce a certificate of origin certifying that FJI had manufactured the products.

Over the next couple of years, Eveden and FJI worked closely in the manufacturing and shipping of finished Eveden products within and from the Duty Free Zone. The physical plant bore a sign that read, "Eveden by F&J Internacional, S.A." Eveden formed a Dominican

subsidiary, Eveden Dominicana, to participate in the manufacturing process within the Facility. Eventually, rather than ship already cut goods to the Facility to be sewn there, Eveden Dominica employees cut, and FJI employees sewed, all within the same physical plant.

Multiple financial dealings occurred between the parties, sometimes at arm's length, sometimes as practical, if not formal, joint venturers. In late 2006 and early 2007 Eveden and FJI explored establishing a formal joint venture, and they executed a Good Faith Agreement ("GFA") and Letter of Intent to form a Joint Venture ("LOI"). As things turned out, according to Eveden, relations between the parties soured before the contemplated joint venture could be formally established.

    B.    The Insurance Agreement

Eveden purchased from Northern Ocean Marine Open Cargo Policy, No. NBJC50154, effective September 1, 2007, ('the policy"), insuring the coverage period from September 1, 2007 through August 31, 2008. Clause 52 of the policy covered Eveden "against all risks of physical loss or damage from any external cause," subject to certain exemptions.

    C.    The "Loss"

In early 2008, FJI was experiencing financial difficulties. For example, it wanted to terminate some of its employees but could not afford to pay the severance payments required by Dominican law. Eveden agreed to absorb fifty percent of the severance payments. Eveden also agreed to loan FJI emergency working capital so FJI could pay various creditors. That led to an internal dispute between FJI's partners, Herradon and Garcia. The joint venture deal between Eveden and FJI apparently fell apart as a result, and by May, 2008, negotiations commenced for Eveden to purchase FJI's business, including its Duty Free Zone license. Before the transaction

could be consummated, Eveden discovered that an attachment, referred to as an "embargo" in Dominican law, had been obtained against FJI's assets by a creditor of Herradon.

Eveden became concerned that because, in order to take advantage of duty free benefits the work in process and finished goods were nominally regarded as FJI's under Dominican law, it would have difficulty protecting what it regarded as its property within the Facility from seizure by FJI's creditors. In June, Eveden and FJI discussed a proposal where Eveden would purchase some of FJI's assets and would provide payment to FJI in consideration for FJI's cooperation with the release of Eveden's assets. These negotiations stalled, however, because Eveden balked at FJI's monetary demand.

Meanwhile, another creditor of FJI surfaced with documentation that purported that FJI had pledged all of the inventory and equipment of the Facility to it. On June 19, 2008, FJI evicted Eveden and its employees from the Facility and subsequently refused to permit their return.

On June 26, 2008, Eveden sued FJI in the Court of First Instance for San Pedro de Macoris, seeking a judicial order authorizing entry into the Facility to retrieve what it claimed as its property. The court granted Eveden an embargo on the goods, but did not authorize either entry or removal of goods. A few days later, the court ordered that the goods remain in the Facility with FJI as their custodian. Over the next two months, Eveden, FJI, and FJI's major creditor attempted to resolve the impasse by negotiations, but they were not fruitful.

Meanwhile, during the 2008 summer, various FJI employees brought wage or severance claims in the San Pedro de Macoris Labor Court and also obtained embargoes on the property within the Facility. The goods were originally scheduled to be sold in later August or early September to satisfy the employee's claims, but Eveden was allowed to intervene and succeeded

in postponing the sale. Eventually, the Labor Court ruled that Eveden had failed to prove that the embargoed assets belonged to it, and further ruled that even if they did, Eveden, given its relationship to FJI and the manufacturing Facility, would nonetheless be liable to employees. Eventually, the goods were sold for the benefit of the employee claimants in the fall of 2008 (after the expiration of the coverage period of the insurance policy).

**II.     Standard of Review**

Summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing the basis for its motion and identifying where there exists a lack of any genuine issue of material fact. Id. at 323. A dispute is "genuine" only if a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As to materiality, "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. In considering a motion for summary judgment, the Court must "view the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

**III.    Discussion**

   A.    Liability

The parties agree that the relevant portion of the insurance agreement at issue provides "all-risk" coverage. An all-risk policy creates a "special type of insurance extending to risks not

usually contemplated." Markel Am. Ins. Co. v. Pajam Fishing Corp., 691 F. Supp. 2d 260, 265 (D. Mass. 2010). An insured bears the burden of establishing a prima facie case for recovery under an all-risk insurance policy. Fajardo Shopping Center, S.E. v. Sun Alliance Ins. Co. of Puerto Rico, Inc., 167 F.3d 1, 7 (1st Cir. 1999).

Under the relevant provision, for coverage to apply, a physical loss must have occurred that is also fortuitous. See Markel, 691 F. Supp. 2d at 265. A fortuitous event is "without intention or design, and which is unexpected, unusual and unforeseen" Id. Plaintiff need not prove the cause of a fortuitous loss, but rather only that the loss occurred. Id. at 265-66.

The parties also agree that in this case questions of domestic law are answered by reference to federal general maritime law. In cases of marine insurance, the doctrine of proximate cause is strictly applied, whereby the assured may recover for a loss only if it was proximately caused by a hazard covered by the policy. Lanasa Fruit S.S. & Imp. Co. v. Universal Ins. Co., 302 U.S. 556, 562 (1938).

Eveden argues that FJI wrongfully converted its goods held at the Facility, and the wrongful conversion proximately caused Eveden's loss. Loss resulting from conversion is both physical and fortuitous, and "all-risk language…covers conversion." Intermetal Mexicana, S.A. v. Ins. Co. of North America 866 F.2d 71, 78 (3d Cir. 1989) quoting Buckeye Cellulose Corp. v. Atlantic Mut. Ins. Co., 643 F. Supp. 1030, 1036 (S.D.N.Y. 1986). Thus, Eveden relies on the theory that a wrongful conversion occurred to establish that there was a "fortuitous" "physical" loss that brings the loss within the scope of the policy. The determinative question is whether Eveden's theory that there was a wrongful conversion is legally tenable.

Consideration of Dominican law pertaining to embargoes is relevant to that question. Under Federal Rule of Civil Procedure 44.1, a determination of foreign law is a question of law for the Court to decide. The record contains input from each party's expert on Dominican law, and after considering their submissions, I make the following determinations.

Embargoes issued by the Civil Chamber of the Court of the First Instance act as a lien upon physical assets. Embargoes may be obtained through ex parte application when the Civil Chamber is persuaded that a credit exists that is liquid and for a sum certain, that it is due and payable, and that the debtor's assets are in danger of being dissipated. As in our law, an embargo may be used for the purpose of preserving property so that it is not moved or dissipated pending litigation on the merits of a claim. The guardian of the assets faces liability if the assets under embargo are not preserved. As noted above, Dominican law recognizes a presumption that the party in possession of property is the owner of that property.

Conversion is an intentional and wrongful exercise of dominion or control over a chattel, which seriously interferes with the owner's rights in the chattel. See Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 94 (1st Cir. 1993). Eveden claims that FJI converted Eveden's assets on June 25, 2008 when Eveden's counsel went to the warehouse, demanded return of the assets which had lawfully been in FJI's possession, and that demand was refused.

Other issues aside, the fundamental flaw in Eveden's case is that it cannot establish that FJI *wrongfully* exercised control over the property. There is no dispute between the parties that as of June 25, 2008, FJI was embroiled in a number of legal quarrels with creditors. There were embargoes on FJI's assets authorized by a Dominican court with proper jurisdiction. The embargoes required FJI to maintain the property and not permit the assets to leave the

warehouse. Compliance with a legal requirement to freeze the assets in place, without more, simply does not amount to conversion. See HRG Development Corp. v. Graphic Arts Mut. Ins. Co., 527 N.E.2d 1179, 1181 (Mass. App. Ct. 1988) ("[Plaintiff] may have temporarily lost the use and enjoyment of its equipment, but only as a result of a proper order of the court which temporarily relieved [plaintiff] of its possessory rights.")

The policy provision relied on by Eveden, set forth in Clause 52, requires a "physical" loss. Intangible losses, such as a defect in title or a legal interest in property, are generally not regarded as "physical" losses in the absence of actually physical damage to the property. See id. at 1180 ("Nor do we think the salient phrase ('physical loss or damage') fairly can be construed to mean physical loss in the absence of *physical* damage."). So, for example, an "'all risk' policy does not provide coverage for a defect in title." Id. at 1181. See also Commercial Union Ins. Co. v. Sponholz, 866 F.2d 1162 (9th Cir. 1989) (loss of vessel by police seizure not a "physical" casualty under "all risk" policy).

Moreover, losses falling within an "all risk" clause such as Clause 52 must have been "unforeseen" or "fortuitous." See HRG Development Corp., 527 N.E.2d at 1180. See also Standard Elec. Supply Co., Inc. v. Norfolk & Dedham Mut. Fire Ins. Co., 307 N.E.2d 11, 12 (Mass. App. Ct. 1973). Whether a loss has been fortuitous is a question of law, Intermetal Mexicanam, 866 F.2d at 77, and "there is nothing fortuitous about the fact that a creditor . . . would resort to the courts to obtain collateral for unpaid debts." Id.

In sum, the placement of embargoes, and the ultimate judicial disposition of the property at the Facility, constituted neither a physical casualty nor a fortuitous loss, as would be necessary for recovery under Clause 52 of the Northern policy.

Eveden has not met its burden of proving a loss covered by the policy.[1] The undisputed facts show that, given the fact of the embargoes, in the summer of 2008 FJI had a legal obligation under Dominican law to refuse Eveden's demand to turn over any property held within the manufacturing Facility. The actions of FJI in this respect do not amount to conversion or any fortuitous physical loss covered by the policy.

**IV.**   **Conclusion**

For the foregoing reasons, the defendant's Motion for Summary Judgment (dkt. no 88) is GRANTED. The plaintiff's Motion for Summary Judgment (dkt no. 92) is DENIED. The plaintiff's Motions for Partial Summary Judgment on Northern's nondisclosure defense (dkt. no 94), and for exclusion due to strikes, riots and civil commotions or employee dishonesty exclusions (dkt. no. 96) are MOOT. Judgment shall enter for the defendant.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

[1] In light of this conclusion it is not necessary to consider in detail Northern's additional arguments that certain policy exclusions also would preclude coverage.